IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ALICIA MARIE LEACH,
      Plaintiff,

vs.                              Case No.: 3:16cv397/MCR/EMT

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,
      Defendant.
_____/

## **ORDER, REPORT AND RECOMMENDATION**

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq.*  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017.  Pursuant to Fed. R. Civ. P. 25(d), she is therefore automatically substituted for Carolyn W. Colvin as the Defendant in this case.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.     PROCEDURAL HISTORY

On May 4, 2012, Plaintiff filed applications for DIB and SSI, and in both applications she alleged disability beginning August 1, 2010 (Tr. 17).[2] Her applications were denied initially and on reconsideration, and thereafter Plaintiff requested a hearing before an administrative law judge ("ALJ").  A hearing was held on September 24, 2014, and on December 3, 2014, the ALJ issued a decision in which she found Plaintiff "not disabled," as defined under the Act, at any time through the date of her decision (Tr. 17–29).  On June 9, 2016, the Appeals Council denied Plaintiff's request for review (Tr. 1).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).

---

[2] All references to "Tr." refer to the transcript of Social Security Administration record filed on December 19, 2016 (ECF No. 6).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

## II.    FINDINGS OF THE ALJ

On December 3, 2014 (date of ALJ decision), the ALJ made several findings

relative to the issues raised in this appeal (Tr. 17–29):

1)    Plaintiff met the insured status requirements of the Act through December 31, 2016;[3]

2)    Plaintiff had not engaged in substantial gainful activity since August 1, 2010, the alleged onset date;

3)    Plaintiff had the following severe impairments: status post spinal fusion, depression, and anxiety;

4)    Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

5)    Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except Plaintiff was limited to work which would only require her to: occasionally climb ramps/stairs; never climb ladders/ropes/scaffolds; occasionally stoop, crouch and crawl; occasionally have exposure to vibrations and mechanical moving parts; and understand, remember and carry out simple routine and repetitive tasks;

6)    Plaintiff was unable to perform any past relevant work;

7)    Plaintiff was born on August 29, 1978, and was 31 years old, which is

---

[3] Thus, the time frame relevant to Plaintiff's claim for DIB is August 1, 2010 (date of alleged onset), through December 3, 2014 (the date the ALJ issued her decision).  The time frame relevant to her claim for SSI is May 4, 2012 (the date she applied for SSI) through December 3, 2014.  *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which he is both disabled and has an SSI application on file).

defined as a younger individual aged between 18 and 44, on the alleged disability onset date;

8)    Plaintiff had a marginal education and was able to communicate in English;

9)    Transferability of job skills was not material to the determination of disability because using the Medical Vocational Rules as a framework supported a finding that Plaintiff is "not disabled," whether or not Plaintiff had transferable job skills;

10)   Considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform;

11)   Plaintiff had not been under a disability, as defined in the Act, from August 1, 2010, through the date of the decision.

## III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); see also Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with

or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th

Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd.,

921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied,

the Commissioner's decision will not be disturbed if in light of the record as a whole

the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g);

Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote

v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a

scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person

would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S.

389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison

Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125

F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or

substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d

1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates

against the Commissioner's decision, the decision must be affirmed if supported by

substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

     The Act defines a disability as an "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.    If the claimant is performing substantial gainful activity, she is not disabled.

2.    If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.    If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.    If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past

relevant work, if other work exists in significant numbers in the national economy that

accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps

her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes

such an impairment, the burden shifts to the Commissioner at step five to show the

existence of other jobs in the national economy which, given the claimant's

impairments, the claimant can perform.  <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1052

(11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then

prove she cannot perform the work suggested by the Commissioner.  <u>Hale v. Bowen</u>,

831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S PERSONAL AND MEDICAL HISTORY

A.    Personal History

Plaintiff testified at her September 24, 2014, hearing before the ALJ that she

last worked in 2012, before she had back surgery (Tr. 42).  Plaintiff stated that, before

her surgery, her doctor advised her that the surgery "would either make me better, feel

the same, or worse, and since the surgery my back pain has gotten worse" (Tr. 45).

Plaintiff provided that the area above the "hardware" in her back where the spinal

fusion was performed had started to hurt and was getting worse every month (*id*.).

She indicated that her pain radiates into her left leg and pinches and burns daily (*id.*). She stated that on a good day her pain level would be at "a three" and on a bad day at "anywhere between a nine and a ten" (*id.*). She indicated that her lower levels of pain were the result of the medication she was on and that on the bad days she would "end up staying still pretty much most of the day" (*id.*).

Plaintiff also testified that she had severe neck pain and that "[i]t hurts for me to put my head back. If I do anything a little too strenuous at all, I cannot turn my neck at all left, or right, or down, or backwards" (Tr. 46). She stated that she has to lie down approximately four or five times a day, sometimes for 45 minutes but sometimes for two to three hours at a time, as this is the most comfortable position for her to relieve her pain (Tr. 58–59).

Plaintiff indicated that she could usually walk for about 30 minutes before deep pain in her hip started occurring, that she could stand for 45 minutes to an hour before needing to sit, and that she could sit for 45 minutes at a time (Tr. 50). She believed she could pick up 25 pounds (*id.*). Plaintiff further testified that she drove her car two or three times per week, doing errands such as going to the grocery store and the bank. She was also able to prepare ready-made meals, tend to her personal care needs, and perform light household chores (Tr. 50–52).

B.    Medical History

While Plaintiff's medical history includes cancer, abdominal problems, and mental health issues, Plaintiff does not challenge the ALJ's findings on these bases but rather limits the focus to Plaintiff's physical problems with neck and back pain. Accordingly, this Report focuses on these pain issues as well.

On June 10,  2010, Plaintiff was involved in a motor vehicle accident in which she received emergency care at Sacred Heart Hospital for a whiplash-type effect that caused pain in her neck and lower back (Tr. 582).  She subsequently returned to the hospital in July 2010, with complaints of worsening back pain (Tr. 573–74).  On January 23, 2011, Plaintiff went to the emergency room complaining of neck and back pain after being thrown from a horse (Tr. 558–70).  Diagnostic spinal imaging was negative for any fracturing or bony abnormality (Tr. 568–70).

On May 11, 2012, Plaintiff underwent surgery on her back (Tr. 535–45). Indications included bilateral L4 and L5 pars defects, an unstable L4–L5 Grade I spondylolisthesis, and a stable L5–S1 Grade I spondylolisthesis (Tr. 543).  Although the surgery was elective, the need for surgery was seen as urgent because of the instability at L4–L5 (Tr. 537).

During her June 12, 2012, followup visit, Plaintiff reported still having some sharp pain in her lower back and hips but stated that the pain consistency is very different from before the surgery and that she felt there was improvement (Tr. 597).

X-ray results showed stable alignment in the spine and that the rods and screws and interbody cages were all well-placed (*id*.).  At an October 10, 2012, followup visit, Plaintiff reported that since the operation she had significantly improved over time (Tr. 594).  She stated that she was still experiencing sharp left hip pain and numbness in the left leg but was overall "very happy" with the results of the surgery (*id*.).

Plaintiff thereafter sought treatment for pain management, which the ALJ recounted in detail:

> On September 21, 2012, the claimant began receiving treatment from a pain management specialist, Robert Sackheim, M.D.  The claimant initially reported her neck and back pain level was "8 of 10" [Tr. 642]. Dr. Sackheim prescribed Methadone 5mg for pain [Tr. 644].  Just four days later, the claimant reported her pain had decreased to "5 of 10" [Tr. 640].  Nevertheless, she reported "inadequate pain relief on the current dosage." [Tr. 640].  Therefore, Dr. Sackheim increased the claimant's Methadone dosage to 10mg [Tr. 641].  From this point forward, the claimant repeatedly reported "adequate pain control" and denied "any untoward side effects from the medication" [Tr. 630–638].  The claimant's reported pain levels began a downward trend with occasional spikes.  It appears from the treatment records that the claimant's pain level waxes and wanes, but she generally receives "adequate pain control" from her prescribed treatment modality.  At times, the claimant's pain level is subjectively rated as 3 or 4 out of 10.  At other times, it is rated as 5 or 6.  On more rare occasions, the claimant reports her pain level reaches 7 or 8 out of 10.  The undersigned notes that the claimant very rarely reports her pain level to be greater than 5 during two consecutive visits to Dr. Sackheim's office.  The claimant has also consistently informed Dr. Sackheim that she is able to perform her activities of daily living when taking her prescribed medications [Tr. 630–38]. Dr. Sackheim's objective clinical observations also repeatedly showed: a steady gait; no limp; and "good toe-heel gait" [Tr. 630–38].

Persistent positive objective signs include: trigger point tenderness and muscle spasms in the claimant's neck, lower back and gluteal muscles [Tr. 630–38]. The record also reveals isolated complaints of pain in the claimant's knees, and left wrist/fingers (*see e.g.* [Tr. 718]). Treatment records do not show these complaints to be common. Although these subjective complaints were supported by clinical observations, those observations did not persist (although the clinical signs of neck and back pain remained throughout). In summary, a longitudinal review of the claimant's treatment record reveals she continues to suffer mild/moderate pain in her neck and back. This pain occasionally spikes. On rare occasions, her pain radiates into her extremities. However, the claimant consistently reports receiving "adequate pain control" from her prescribed medications, and her doctor has not seen fit to further increase her dosage.

(Tr. 24–25) (citations either omitted or converted to the "Tr." format used by the court).

Plaintiff was seen on May 15, 2013, by State agency medical consultant Edmund Malis, M.D., who completed a Disability Determination Explanation form (Tr. 115–28). Based upon his review of Plaintiff's medical records, Dr. Malis determined that Plaintiff would be able to occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds (Tr. 124). He found that Plaintiff could stand or walk for 6 hours during an 8-hour workday and sit for that length of time as well (*id.*). He determined that Plaintiff could frequently climb ladders, ropes, and scaffolds; that she could climb ramps and stairs without limitations; that she could balance and kneel

without limitations; and that she could occasionally stoop, crouch and crawl (*id.*). His conclusion was that Plaintiff had the RFC to perform work at the light level (Tr. 127).

Based upon the evidence above, the ALJ determined that, while Plaintiff's medically determinable impairments could reasonably be expected to cause pain and other alleged symptoms, Plaintiff's statements relating to the intensity, persistence, and limiting effects of her pain symptoms were not entirely credible (Tr. 23).

V.    DISCUSSION

A claimant may establish that she has a disability through her own testimony regarding her pain or other subjective symptoms. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). In such a case, the claimant must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Id.* If, as here, the ALJ determines under the latter prong of the standard that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain, the ALJ must then evaluate the extent to which the intensity and persistence of the pain limits the claimant's ability to work. 20 C.F.R. § 404.1529(b). The ALJ may consider the claimant's history, the medical signs and laboratory findings, the claimant's

statements, statements by treating and non-treating physicians, and other evidence relating to how the pain affects the claimant's daily activities and ability to work. § 404.1529(c). "While both the Regulations and the Hand [v. Bowen, 793 F.2d 275, 276 (11th Cir. 1986)] standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1215. "[P]ain alone can be disabling, even when its existence is unsupported by objective evidence." Foote, 67 F.3d at 1561 (citations omitted).

The presence or absence of evidence to support symptoms of the severity claimed, however, is a factor to be considered. Marbury v. Sullivan, 957 F.2d 837, 839–40 (11th Cir. 1992); Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). When evidence of pain derives from the subjective testimony of the claimant or other personal witnesses, "and a credibility determination is, therefore, a critical factor in the Secretary's decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Tieniber, 720 F.2d at 1255. The ALJ is not required to recite the pain standard word for word, but instead, must make findings that indicate that the standard was applied. See Wilson v. Barnhart, 284 F.3d 1219, 1225–26 (11th Cir. 2002). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be

disturbed by a reviewing court." Foote, 67 F.3d at 1561–62 (citing MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986)).

Thus, it was entirely within the ALJ's "realm of judging" to find that the quantum of pain alleged by Plaintiff was not credible when considered in light of the other evidence in the record.  Arnold v. Heckler, 732 F.2d 881, 884 (11th Cir. 1984); see also Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).

Plaintiff argues that her pain "did not simply go away after the surgery," and emphasizes that she went to a pain management doctor from January 2013 to August 2014 on a monthly basis, which underscores the extent and severity of her pain (ECF No. 8 at 7).  Plaintiff also asserts that the fact that her physician Dr. Sackheim prescribed a narcotic pain medication points to the severity of her impairments. Plaintiff states that the ALJ failed to properly consider her testimony as to alleged pain symptoms in her analysis.

The court finds, however, that the ALJ's conclusions regarding the credibility of Plaintiff's subjective complaints of pain were amply borne out by the evidence in the record.  As the ALJ stated, Plaintiff's medical history shows that much of the time her pain was at manageable levels, and when her pain level spiked higher, it was adequately maintained by her pain medication.  Plaintiff sees the fact that she is required to take a narcotic painkiller as evidence that her pain is severe, but beyond

its severity, the fact that her pain can be adequately managed is part of what drove the ALJ's conclusion that Plaintiff had the RFC to work at a sedentary level despite her pain.

The ALJ buttressed her RFC determination with the opinion of Dr. Malis, to which she gave great weight.  In fact, where Dr. Malis assessed Plaintiff's physical capabilities at the light level, the ALJ limited her further, assessing her RFC at less than a full range of sedentary work (Tr. 26).  Additionally, the ALJ found Plaintiff's testimony regarding her daily living activities, as described above, to be inconsistent with her subjective claims that her pain is disabling (Tr. 27).  Last, the ALJ noted that Plaintiff had performed part-time work since her alleged onset date, thus directly suggesting that Plaintiff is able to functionally engage in some level of substantial gainful activity (Tr. 27, 253).

In view of the above, the Court concludes that the ALJ fairly addressed Plaintiff's testimony regarding her subjective complaints and pain symptoms and expressly articulated her reasons for discrediting them as inconsistent with the medical record, with the opinions of other physicians, and with Plaintiff's own daily living activities and work record.  Thus, the ALJ's conclusions regarding the credibility of Plaintiff's subjective symptoms were supported by substantial evidence and should not be disturbed.

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be reversed.  42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote</u>, 67 F.3d at 1560.  Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making her findings, or that any other ground for reversal exists.

Accordingly, it is **ORDERED**:

Nancy A. Berryhill is substituted for Carolyn W. Colvin as Defendant in this action.

And it is respectfully **RECOMMENDED**:

That the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida, this 16th day of February 2018.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**